IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RONALD J. CROKENOWER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:14-CV-0200-NKL |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff Ronald Crokenower seeks review of the Administrative Law Judge's decision denying his application for Social Security Disability and Supplemental Security Income benefits. For the following reasons, the decision of the Administrative Law Judge (ALJ) is affirmed.

I. Background

   A. Medical History

Crokenower is fifty-five years old and claims impairments related to his left arm and shoulder and deficits in mental functioning.

From 1971-1976, Crokenower was a resident at Lakemary Center, Inc. Tr. at 296. He was placed in the Center by the Illinois Department of Children and Family Services due to border-line retardation, extreme withdrawal, immaturity, and impulsivity. *Id.* Upon discharge, Crokenower was noted to have the educational competency equivalent

1

to a third or fourth grade level. *Id.* Post discharge, Crokenower enrolled in the Said Educational Facility. In 1978, he received a certificate indicating successful completion of twelfth grade requirements. Tr. at 298.

On July 30, 2008, Crokenower was seen at St. Mary's Hospital for reported left elbow and shoulder pain. Tr. at 290. A long arm splint was applied. Tr. at 291. Upon x-ray, it was noted that Crokenower had mild degenerative changes in the acromio-clavicular joint with inferior spurs and impinging on the rotator cuff space. Tr. at 288-289. Crokenower attended follow up appointments on August 7 and August 21. At his second appointment, it was noted that he had limited use of his upper arm and was restricted from heavy lifting. Tr. at 294. Crokenower reported that his pain was improved and he had been doing some light activity. *Id.*

On November 19, 2010, Crokenower was seen by Ann Lee, M.D., for a consultative examination. Tr. at 244-246. He reported problems with his arms, sinuses, and bilateral knees. Tr. at 244. Dr. Lee noted that an x-ray of his shoulder showed mild degenerative joint disease. *Id.* She further noted that he did not spell the word "world" backwards correctly and he was mildly impaired in judgment. *Id.* She stated that Crokenower was not limited with regard to lifting, standing, walking, or sitting. *Id.* Dr. Lee finally noted that Crokenower was of borderline intelligence. Tr. at 246.

On February 25, 2011, Crokenower was seen at Centerpoint Medical Center for a left wrist and hand injury. Tr. at 253-254. Upon x-ray, it was revealed that Crokenower had a displaced comminuted fracture distal radius and fracture ulnar styloid. Tr. at 251. In early March, Crokenower underwent surgery to repair the broken bones. He attended

2

two follow up appointments post-surgery. At his second appointment on April 4, 2011, it was noted that he had limited range of motion in the wrist and was sent for physical therapy. Tr. at 276. His pain was under control. *Id.* He was to participate in physical therapy until June 20, 2011. Tr. at 281.

On April 8, 2011, Denise R. Trowbridge, M.D., completed a case analysis regarding Crokenower's left arm injury, sinus infections, and shoulder tendonitis. Tr. at 287. She noted Crokenower sustained injury to his left wrist when he fell while shoveling snow but could do basic work around the house with one arm. *Id.* She opined that Crokenower would be non-severe by February 2012. *Id.*

### B. ALJ Decision

Upon review of the record, the ALJ found that Crokenower was status post comminuted left distal radius fracture, but he did not have any impairment that limited his ability to perform basic work related activities for twelve consecutive months, and therefore did not have a severe impairment. Tr. at 14. Based on Crokenower's progress in therapy, failure to return to the doctor after his April 2011 checkup, and effective pain control via medication, the ALJ concluded that his treatment history was inconsistent with a claim for disability. Tr. at 15. The ALJ further noted that Crokenower was able to walk, stand, sit, lift, push, pull, reach, and handle, as evidenced by his ability to prepare simple meals, do his own shopping, wash dishes, and do his own laundry. Tr. at 15. He also spent a significant period of time working eighteen hours a week cleaning a doctor's office until July 20, 2012. *Id.* He also did "odd jobs" in order to make extra money, which the ALJ stated showed "an ability to deal with changes." Tr. at 16.

3

The ALJ gave great weight to Dr. Towbridge's opinion, which opined that Crokenower's impairments would no longer be severe by February 2012. *Id.* He then reviewed Dr. Lee's findings, which stated that Crokenower's shoulder joint ranges were all within normal limits bilaterally, and he suffered from no significant joint swelling, deformity, or tenderness. *Id.* The ALJ denied Crokenower benefits, stating that his decision was "supported by the preponderance of the evidence including the claimant's failure to seek consistent treatment and the credible assessment by the state agency medical consultant." *Id.*

## II. Standard of Review

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision 'simply because some evidence may support the opposite conclusion.'" *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. Discussion

Crokenower argues that the ALJ erred in (1) failing to include his left shoulder, hand, and wrist injuries, and mental retardation as severe impairments; and (2) failing to properly develop the record to consider Listing 12.05(B) and (C).

4

## A. Evaluation of Crokenower's Severe Impairments

Crokenower argues that left shoulder pain, left distal radius fracture, and mental retardation constitute more than slight abnormalities, such that they should be considered severe impairments.

While the Supreme Court has held that the necessary proof for a severe medical impairment is *de minimus*, it is not a toothless standard. *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007). An impairment is non-severe if it has no more than a minimal impact on an individual's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a) and 416.921(a). In order to be considered a disability, the "inability to engage in any substantial gainful activity by reason of . . . impairment . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Barnhart v. Walton*, 535 U.S. 212 (2002) (interpreting § 423(d)(1)(A)). Both the disability and the impairment must have existed or be expected to exist for 12 months. *Id.*

In evaluating Crokenower's application for benefits, the ALJ concluded that he had a medically determinable impairment, which was status post comminuted left distal radius fracture. Tr. at 14. The ALJ went on to conclude however, that Crokenower had no impairment that was expected to significantly limit his ability to perform basic work-related tasks for 12 consecutive months. *Id.* Crokenower gives no explanation of how the ALJ erred in concluding that his impairments were not expected to last for 12 months. Though Crokenower's medical history reveals two short periods of treatment for arm,

5

shoulder, and wrist injuries, Crokenower presents no evidence of enduring impairments beyond the duration of treatment.

Crokenower further contends that the ALJ erred in relying on the conclusions of Dr. Towbridge, who was not an examining physician. However, in relying on Dr. Towbridge's conclusion that Crokenower's impairment would not be severe by February 2012 and therefore did not meet the durational requirement, the ALJ did not disregard or discredit the opinion of Dr. Lee, an examining physician. In fact, after noting the great weight assigned to Dr. Towbridge's opinions, the ALJ went on to recount Dr. Lee's conclusions, upon which he also relied. Dr. Lee's conclusion that Crokenower did not suffer from any significant functional deficit was consistent with Dr. Towbridge's conclusion. As such, substantial evidence supported the ALJ's decision to assign great weight to Dr. Towbridge's opinion.

Beyond the doctors' opinions, substantial evidence of the record supports the ALJ's conclusion that Crokenower has no severe physical impairment. Crokenower's pain was managed primarily with over the counter medications, and was completely managed by prescription medications. Tr. at 15, 49. Crokenower testified that he worked eighteen hours per week cleaning a doctor's office until the office closed in July 2012. Tr. at 14, 43-46. He also stated that he worked a variety of odd jobs to earn extra money and was able to prepare simple meals, do his own shopping, and do laundry. Tr. at 15, 58. Crokenower did not seek continuous treatment for any of his alleged disabilities, despite having Medicaid benefits that would have allowed him to obtain treatment for his forearm and other pain if it endured. Tr. at 15, 42. Crokenower's failure to obtain

6

Case 4:14-cv-00200-NKL   Document 11   Filed 10/20/14   Page 6 of 9

treatment and ability to work and perform activities of daily living "are inconsistent with subjective complaints of disabling pain." *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009); *see Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) ("Working generally demonstrates an ability to perform a substantial gainful activity.").

Crokenower next argues that the ALJ erred by failing to find his mental retardation to be a severe impairment. Though the record contains evidence that Crokenower had been in a center for special needs individuals for a few years during childhood, the only evidence on the record of Crokenower's mental retardation as an adult is Dr. Lee's notation that Crokenower was "mildly impaired in judgment" at his visit with her. Tr. at 244. Dr. Lee did not opine that Crokenower was mentally retarded or struggled with notable mental deficits. Outside of this statement, the record contains no evidence of Crokenower struggling with mental retardation as an adult. Crokenower lived by himself, took care of himself, worked, and sought out odd jobs to make additional money. Given this record, there is substantial evidence to support the ALJ's failure to find Crokenower's mental capacity to be a severe impairment.

### B. Development of the Record and Consideration of the Listings

Crokenower also argues that the ALJ failed to develop the record by requiring Crokenower to undergo IQ testing in order to determine whether he was disabled under Listings 12.05(B) or (C). He argues that if the ALJ had developed the record, he would have found that Crokenower met one of these Listings.

Crokenower "bears a heavy burden in showing the record has been inadequately developed. He must show both a failure to develop necessary evidence and unfairness or

7

prejudice from that failure." *Combs v. Astrue*, 243 Fed. App'x 200, 204 (8th Cir. 2007). In order to qualify for benefits pursuant to Listing 12.05, the claimant must first prove that he suffers from "significantly subaverage general intellectual functioning with deficits in adaptive functioning." 20 C.F.R. § 404, Subpart P, App. 1, § 12.05. The claimant must then prove that he meets the requirements of one of the subparts. *Id.* Crokenower argues that he would be disabled under either subpart (B), requiring "a valid verbal, performance, or full scale IQ of 59 or less," or subpart (C), requiring "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.*

Substantial evidence on the record supports the conclusion that Crokenower is not limited in his adaptive functioning and therefore would not qualify for benefits under the Listing. *See Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006) (holding that "the requirements in the introductory paragraph are mandatory"). Crokenower worked consistently, prepared his own meals, did his own shopping, washed dishes, and did laundry. Such tasks are inconsistent with deficits in adaptive functioning. *Cheatum v. Astrue*, 2008 WL 4371489, at *2 (W.D. Mo. 2008). As the record suggests that even if Crokenower's IQ fell within the range prescribed by the Listing he would not have met the Listing due to his adaptive functioning abilities, any error committed by the ALJ in failing to develop the record by obtaining an IQ test was harmless.

**IV. Conclusion**

For the reasons set forth above, the ALJ's decision is affirmed.

8

s/ Nanette K. Laughrey
                                              NANETTE K. LAUGHREY
                                              United States District Judge

Dated:  October 20, 2014
Jefferson City, Missouri